# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM DOUGLAS PERRY, | ) | CASE NO. 5:12-cv-00802 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| TERRY TIBBALS, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, William Douglas Perry ("Perry"), challenges the constitutionality of his conviction in the case of *State v. Perry*, Stark County Court of Common Pleas Case No. 2008-CR-2062.  Perry, *pro se*, filed a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on April 2, 2012.  On August 24, 2012, Warden Terry Tibbals ("Respondent") filed a Motion to Dismiss the petition as time-barred.  (ECF No. 8.)  Perry filed a Memorandum Contra to Respondent's Motion to Dismiss on September 21, 2012.  (ECF No. 10.)  On January 31, 2013, at the Court's direction, Respondent filed a brief addressing the merits of Perry's petition and furnished the Court and Perry with a copy of the plea and sentencing transcripts.  (ECF No. 12.)  On March 14, 2013, Perry filed a "Memorandum Contra to Respondent's Brief."  (ECF No. 15.)

For reasons set forth in detail below, it is recommended that Perry's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  Here, because Perry pled guilty, the state appellate court did not summarize the facts surrounding the crimes of which Perry was convicted.  However, in state court, on October 16, 2009, Perry and the prosecution stipulated to the following facts:

1. William Perry is 42 years old, and his date of birth is 1967.  In 1999 he was convicted in Bay County, Florida of one count of Shooting into Building, Vehicle or Dwelling, a felony.

2. On October 3, 2008, William Perry was living in a mobile home at 94 Cedar N.W., North Canton, Stark County, Ohio.

3. On October 3, 2008, Brett Smith was living in an adjacent mobile home, located at 81 Balsam St., North Canton, Stark County, Ohio.

4. On October 3, 2008, Brett Smith received his SSI disability checks via direct deposit into his bank account at Lake Community Federal Credit Union in Hartville, Ohio.  The monthly deposits totaled approximately $1100.00.

5. Brett Smith's habit was to withdraw the money from his account on the date of direct deposit, and he would take the money primarily in denominations of $100 and $50 bills. On the morning of October 3, 2008, Brett Smith did withdraw $1182.00 in cash from the Credit Union in Hartville, Ohio.

6. Brett Smith also had established a habit of purchasing multiple packs of non-generic brand cigarettes on the date that he withdrew his money from the bank.  On October 3, 2008, Brett Smith did purchase multiple packs of Marlboro Light cigarettes.

7. On October 3, 2008, Brett Smith met his mother, Judy Smith, for lunch at the Westfield Mall food court in Jackson Township, Stark County, Ohio. After lunch, they went to Wal-Mart also located in Jackson Township.

8. At approximately 2:30 p.m., Brett Smith and his mother left Wal-Mart in separate cars.  Before leaving, Brett indicated that he planned to come over

-2-

to his mother's home for supper that evening.

9. At approximately 4:15 p.m., Brett Smith called his mother to ask what time she would be home, so that he could come over to see his niece and to eat supper.

10. On October 3, 2008, Barb and James Hanson lived in a mobile home in the same community as Brett Smith and William Perry. The Hansons' mobile home was located at 65 Spruce N.W., North Canton, Ohio. On that date, they were having some remodeling done to their home, and they had a kitchen sink sitting outside of their mobile home.

11. At approximately 5:15 p.m., William Perry approached the Hansons' trailer and asked if he could take the sink. When Mr. Hanson informed him that he could not, Perry became very irate with Mr. Hanson.

12. At the time, Mr. Hanson noticed that Perry was wearing a silver bracelet. A silver bracelet which was subsequently recovered from the crime scene at Brett Smith's trailer, was later identified through photograph by Mr. Hanson as the one he observed William Perry to be wearing on October 3, 2008.

13. Later that same afternoon of October 3rd, the Hansons were leaving their trailer. At the time, they observed William Perry standing inside the doorway of Brett Smith's mobile home, and they heard a very heated argument taking place there.

14. Brett Smith never arrived at his mother's home for supper on the evening of October 3, 2008. Brett's mother called his phone several times and received only voicemail.

15. On the morning of October 4, 2008, Brett Smith's mother, Judy Smith, went to his trailer. Brett's vehicle was parked outside, but no one answered the door to the home. While knocking, Judy Smith noticed a smokey odor.

16. Brett's mother returned to the trailer again at approximately 6:30 p.m. on October 4, 2008 and attempted to contact Brett. Again, she received no answer at the door when she knocked, and she continued to smell the smokey odor, so she requested the assistance of the North Canton Police Department. Officer Hemric responded, but indicated that he could not enter the residence at that time.

17. After Officer Hemric left, Judy Smith asked one of Brett's neighbors, Chris Conley, to assist her in entering Brett's trailer. Conley obtained a crow bar and they forced entry into the trailer.

-3-

18. Once inside, Judy Smith felt a sticky substance on the floor and observed an object which appeared to be burnt in the oven, which was on. Upon walking further into the trailer, she found a headless body lying on the bathroom floor.

19. Judy Smith called 911, and North Canton Police Officers responded. Upon their entry into the trailer, Police found the decapitated body, which was later determined to be Brett Smith's, on the bathroom floor. All of the fingers and both thumbs had also been severed. One finger and one thumb were located on the bathroom floor near the base of the toilet. The body had been wrapped in plastic wrap and covered with blue and white paint. A knife was sticking out of his chest.

20. Police discovered Brett Smith's head inside the oven. It was partially wrapped in burnt newspaper and cloth.

21. Brett Smith's wallet and items from it were found on the couch. The wallet had no cash in it, and no money was located inside the trailer. A silver bracelet was located on the floor of the trailer. Paint had been poured over large areas of the trailer, and an odor of a bleach-like substance was noticeable.

22. The investigation by North Canton Police revealed that Brett Smith had recently had an altercation with William Perry, and that Perry was seen inside Brett's trailer on October 3, 2008, the date upon which Brett was killed.

23. A search warrant was obtained for William Perry's trailer, which was adjacent to Brett Smith's. During the execution of the warrant, a dark colored sock was recovered outside Perry's trailer, next to the steps of his deck.

24. The sock was transported to the Canton/Stark County Crime Laboratory. DNA testing revealed the presence of possible blood along with Brett Smith's DNA on the exterior of the sock. Testing further revealed the presence of a DNA profile from the interior of the sock. William Perry could not be excluded as a contributor to that DNA profile, and the results produced an extremely high statistical probability that William Perry was the source of the DNA on the interior of the sock.

25. On October 4, 2008, William Perry was located at a residence on Columbus Road. Also present in the home with William Perry, were his girlfriend, Susan Lockard, and Susan's daughter Sara Lockard and Sara's boyfriend, Chad Long.

26. Officers interviewed all three of these individuals.  Chad Long and Sara
    Lockard informed police that they had taken Sara's mother, Susan Lockard,
    to Perry's trailer on the evening of October 3, 2008.  They further indicated
    that while waiting outside for Susan Lockard to retrieve some items and
    return to their vehicle, William Perry approached their vehicle.  Both Sara
    and Chad described Perry as being very angry, and both indicated that Perry
    was holding a firearm.

27. Susan Lockard told police that she went to William Perry's trailer on
    October 3, 2008 to get her laundry and that she didn't expect him to be there.
    She indicated that since Perry was there, she decided to stay rather than
    leaving with Sara and Chad.  Susan indicated that Perry was upset and that
    on their way back to her residence he broke up with her, dropped her off at
    her home at approximately 10:00 or 10:30 p.m., and that she did not see or
    hear from him until early the next morning when he picked her up to take
    her to work for her 7:00 a.m. shift at Wal-Mart on Tuscarawas Street in
    Canton.

28. Police also interviewed Dustin Lockard, who is the son of Susan Lockard.
    Dustin indicated that on the evening of October 3, 2008 at approximately
    10:30 p.m., William Perry came to his residence and while there gave him a
    pack of Marlboro Light cigarettes.  When Dustin tried to give them back to
    Perry, he told Dustin to "keep them because nothing matters anymore
    anyway."  This pack of cigarettes was seized by North Canton Police as
    evidence in the case.

29. Later investigation revealed that the lot or batch number detected on this
    pack of cigarettes was identical to the lot or batch number found [on] a
    remaining pack of Marlboro Light cigarettes located at the crime scene
    inside Brett
    Smith's trailer.

30. Police also interviewed Adam Volkert, who owns Volkert's Party Store on
    Tuscarawas Street, just east of Wal-Mart.  Volkert told police that a few
    minutes after he opened his store at 7:00 a.m. on the morning of October 4,
    2008, William Perry entered the store and asked if he could cash a $100 bill.
    Perry then purchased three six-packs of beer, some rolling papers and a
    snack cake, paying with a $100.00 bill.  Volkert retrieved a copy of the
    register receipt as well as a video of the transaction, both of which he
    provided to police.  Volkert indicated that he recognized Perry as a regular
    customer of his store.

31. Brett Smith's body was examined by the Stark County Coroner, who
    discovered multiple fractures of Brett's left and right ribs, as well as multiple

fractures of the hyoid with hemorrhage.  The Coroner also noted multiple sub-galeal contusions in the head.

32.  The cause of death was determined to be manual strangulation and blunt impact to the head, trunk and extremities.  The case was ruled to be a homicide.

33.  Police also interviewed Heather Newman, who had worked with William Perry at European Spa for approximately two weeks prior to October 3, 2008.  Newman indicated that during that time she had observed Perry wearing a silver bracelet.  When shown a photo of the bracelet recovered from the floor of Brett Smith's trailer, Newman positively identified it as the one she had seen William Perry wearing before October 3, 2008.

34.  Police also interviewed Lisa Powell, the owner of European Spa.  Powell told officers that William Perry did come to work the morning of October 4, 2008 to provide a haircut to another employee, Whitney Gould.  Powell indicated that she had called Perry the evening before to remind him about the appointment, and also to remind him to pick up his paycheck.  Powell told police that on the morning of October 4th, Perry had a cigarette tucked behind his ear, and that this struck Powell as strange because he was not a smoker.  Whitney Gould confirmed this observation to police as well.  Powell further indicated that Perry did not take his paycheck before he left that day.

35.  William Perry, through recorded phone calls from the Stark County Jail, continually denied any knowledge or involvement in the death of Brett Smith until August 17, 2009.

36.  In the late evening of August 16th into the early morning hours of August 17th, 2009, Chad Long was removing carpet from a bedroom at 125 Hillcrest Ave. NW, North Canton, Ohio, where he resides with Sara Lockard and Susan Lockard.  The three had been living there since mid-October of 2008.  William Perry had previously resided in that home, and had been preparing to move back into it.  He also had access to it while it was vacant prior to his arrest.

37.  When Chad Long removed a duct cover in the closet of the room, he observed two black trash bags hidden inside.  Chad Long immediately contacted the North Canton Police Department.  A search warrant for the residence was obtained and the bags and their contents were collected.

38.  Upon opening the bags, police found clothing, shoes, boots and a 9mm handgun.  The clothing and shoes appeared to have paint and bleach stains

on them, as well as blood.  Also inside the bags was a dark colored sock which was later determined to match the dark colored sock previously located outside Perry's trailer on October 4, 2008.

39.   The items were submitted to the Canton/Stark County Crime Laboratory. DNA testing revealed the presence of Brett Smith's DNA on some of these items.  William Perry was determined to be a possible source of the DNA located on some of the items as well.

40.   In phone calls from the Stark County Jail recorded after August 17, 2009, William Perry indicated to two different people that he had been involved in causing the death of Brett Smith.  Perry further indicated in these phone calls that he had hidden the items in the bags inside the air duct at the Hillcrest residence.

41.   Additionally, one of those individuals delivered to the North Canton Police Department two letters written and sent by William Perry, in which he indicates that he was the individual responsible for the death and mutilation of Brett Smith on October 3, 2008 at Brett Smith's mobile home.

* * *

(ECF No. 8-1, Exh. 4.)

## II.  Procedural History

### A.   Conviction

In October of 2008, a Stark County Grand Jury charged Perry with two counts of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(B) together with death penalty specifications, one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(3), one count of aggravated burglary in violation of O.R.C. § 2911.11(A)(1), one count of tampering with evidence in violation of O.R.C. § 2921.12(A)(1), and one count of gross abuse of a corpse in violation of O.R.C. § 2927.01(B).  (ECF No. 8-1, Exh. 1.)

Perry, represented by counsel, entered into a negotiated guilty plea and agreed upon sentence on October 15, 2009.  (ECF No. 8-1, Exhs. 2 & 3.)  Perry pled guilty to all counts

-7-

before a three judge panel.  *Id*.  After merging the two aggravated murder counts and the specifications, the panel sentenced Perry to life imprisonment without parole.[1]  *Id*. at 10.

## B.    Delayed Direct Appeal

On April 19, 2010, Perry, *pro se*, submitted a Request for Leave to File Delayed Appeal pursuant to Ohio App. R. 5(A) with the Court of Appeals for the Fifth Appellate District ("state appellate court").  (ECF No. 8-1, Exh. 6.)  Perry indicated that he would raise the following assignments of error if his delayed appeal was allowed:

1. When trial counsel ambushed the Appellant with a plea bargain on the day of trial with the threat that he would surely get the death penalty if he were to continue with the trial instead of accepting the plea agreement. When trial counsel did not instruct nor attempt to secure on behalf of Appellant a plea agreement whereas a lesser offense could be pleaded to other than coercing his client to accept the offered plea agreement without negotiation; and

2. When trial counsel failed to instruct, advise, or counsel Appellant with regards to several viable defenses to the charges that could have been presented at trial; and

3. When trial counsel failed to raise several jurisdictional issues; and

4. Trial counsel was ineffective to the prejudice of the Appellant when trial counsel did not advise Appellant that he had a right to appeal and should not waive that right.

*Id*.

On May 7, 2010, the state appellate court denied Perry's request, finding that he had failed to establish good cause for the delay.  (ECF No. 8-1, Exh. 9.)

On June 14, 2010, Perry, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio raising the following proposition of law:

---

[1]  Perry received separate sentences on counts three through six, but those sentences were ordered to be served concurrently with his life sentence.  (ECF No. 8-1, Exh. 2 at 12.)

> Mr. Perry has been denied his right to Due Process, and Equal Protection Under the Law pursuant to Article 1 Section 10 of the Ohio Constitution, and the Fourth, Fifth, and Fourteenth Amendments to The United States Constitution as follows: Mr. Perry's trial counsel was ineffective and coerced him into accepting a plea agreement knowing that Mr. Perry was under the influence of mind alternating [sic] drugs: Mr. Perry's counsel was ineffective in coercing Mr. Perry to waive his rights to appeal; Mr. Perry's counsel was ineffective in not challenging the constitutionally insufficient indictments, that failed to charge any offense whatsoever; and the trial court was acting without authority as its' jurisdiction had never been established in the first instance and all actions of a court without jurisdiction are void *ab initio*.

(ECF No. 8-1, Exh. 10.)  On August 25, 2010, the appeal was dismissed as not involving any

substantial constitutional question.  (ECF No. 8-1, Exh. 12.)

## C.  Postconviction Relief

Meanwhile, on June 1, 2010, Perry, *pro se*, filed a Petition to Vacate or Set Aide Sentence

with the trial court raising the following claims:

> 1.  Defendant's Trial Counsel was ineffective. Counsel prejudiced Defendant by allowing him to enter a Guilty Plea while under the influence of drugs.
>
> 2.  Defendant was denied his Right to Due Process under Article I, Section 10 of the Ohio Constitution as the Indictments failed to charge an offense as they have omitted essential elements.
>
> 3.  The Defendant was denied his Right to Due Process pursuant to the Fourth, Fifth and Fourteenth Amendments to the United States Constitution to have adequate Notice of all essential elements of the alleged offenses set forth in the indictment.
>
> 4.  The indictments for Aggravated Robbery and Aggravated Burglary, counts 3 and 4 fail to charge an offense depriving the defendant of his right to due process, and not being sufficient to charge an offense, they also fail to qualify as a valid predicate offense rendering the indictments for aggravated murder in counts 1 and 2 void as well.

(ECF No. 8-1, Exh. 13.)

On June 14, 2010, the trial court denied Perry's petition.[2]  (ECF No. 8-1, Exh. 16.)

On July 13, 2010, Perry, *pro se*, filed an appeal to the state appellate court raising the following assignments of error:

1.  Mr. Perry received ineffective assistance of counsel in that counsel failed to argue the insufficient indictment(s) that failed to charge an offense, and coerced Mr. Perry to plead guilty to all charges while under the influence of prescription, mind altering drugs in violation of the Sixth Amendment to the United States Constitution and Article I Section 10 of the Ohio Constitution.

2.  The indictments in Counts 1-2-3 and 4 fail to charge an offense as they have omitted essential elements, failed to invoke the courts jurisdiction violating Mr. Perry's rights to due process pursuant to the Fourth, Fifth, & Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

(ECF No. 8-1, Exhs. 17.)

On January 24, 2011, the state appellate court agreed that Perry's post-conviction petition was untimely, indicating that it was filed "well beyond the period provided for in the statute." (ECF No. 8-2, Exh. 23 at 9.)  Nonetheless, the court addressed Perry's substantive claims and affirmed the trial court's judgment.  *Id*. at 26-27.

On March 7, 2001, Perry, *pro se*, filed an appeal with the Supreme Court of Ohio raising the following propositions of law:

1.  Mr. Perry received ineffective assistance of counsel in that counsel failed to argue the insufficient indictment(s) that failed to charge an offense, and coerced Mr. Perry to plead guilty to all charges while under the influence prescription-mind altering drugs in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

---

[2]     Perry's contention – that the 180 day time limit to file a post-conviction petition expired on May 29, 2010, a Saturday – appears to be correct.  (ECF No. 10 at 3.)  In addition, Perry contends that because Monday, May 31, 2010 was a federal holiday – Memorial Day – his June 1, 2010 submission was timely.  *Id*.

-10-

2.     The indictments in Counts 1-2-3 & 4 fail to charge an offense as they have omitted essential elements, failed to invoke the court's jurisdiction violating Appellant's rights to due process pursuant to the Fourth, Fifth, & Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

(ECF No. 8-2, Exhs. 25 & 26.)

On May 4, 2011, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 8-2, Exh. 28.)

**D.     Federal Habeas Petition**

On April 2, 2012, Perry, *pro se*, filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

GROUND ONE:  Mr. Perry received ineffective assistance of counsel in that counsel failed to argue the insufficient indictment(s) that failed to charge an offense, and coerced Mr. Perry to plead guilty to all charges while under the influence of prescription-mind altering drugs in violation of the Sixth Amendment to the United States Constitution, & Article I, Section 10 of the Ohio Constitution.

GROUND TWO:  The indictments in Counts 1, 2, 3, & 4 fail to charge an offense as they have omitted essential elements, failed to invoke the court's jurisdiction and the Petitioner was denied his liberty interest established by the Ohio Constitution to have a grand jury determine probable cause for each and every element of a charged offense in violation of the Petitioner's rights to due process pursuant to the 4th, 5th, & 14th Amendments to the United States Constitution, & Article I, Section 10 of the Ohio Constitution.

(ECF No. 1.)

### III.  Statute of Limitations and Procedural Default

Respondent asserts that Perry's petition is time-barred because he did not file within the one-year limitations period.  Respondent also contends that the instant petition is procedurally defaulted.  The parties dispute whether certain state court filings were timely filed.  Consequently, they also dispute whether the statute of limitations was tolled, and whether the issues raised in the

-11-

filings are procedurally defaulted.  The Court declines to address the statute of limitations and procedural default issues and will instead address the merits of Perry's claims.  The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).  The statute of limitations defense "resembles other threshold barriers--exhaustion of state remedies, procedural default, nonretroactivity--courts have typed 'nonjurisdictional."  *Day v. McDonough*, 547 U.S. 198, 205 (2006).  Based on the Supreme Court's decisions in *Lambrix* and *Day*, some courts have also found that, "because the statute of limitations is not a jurisdictional bar to habeas review, a federal court can, in the interest of judicial economy, proceed to the merits of the habeas petition."  *See, e.g., Sallie v. Humphrey*, 2012 WL 3871906 (M.D. Ga. Sept. 6, 2012); *Terraza v. Adams*, 2012 WL 7687920 (C.D. Cal. Oct. 3, 2012) ("Because resolution of the merits of Petitioner's claim is clear and straightforward, in the interests of judicial economy this court should resolve the claim as discussed below without reaching less-settled statute of limitations issues."), report and recommendation adopted, 2013 WL 990452 (C.D. Cal. Mar. 11, 2013).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

-12-

was adjudicated on the merits in State court proceedings unless the adjudication of
the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States
Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11,
2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S.
362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit
statement by the Supreme Court is not mandatory; rather, "the legal principles and standards
flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404
F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court
has indicated, however, that circuit precedent does not constitute "clearly established Federal law,
as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct.
2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives
at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state
court decides a case differently than [the Supreme] Court has on a set of materially
indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision
involves an unreasonable application of clearly established federal law "if the state court identifies
the correct governing legal principle from [the Supreme] Court's decisions but unreasonably

-13-

applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Court readily acknowledges. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

-14-

**A.  Ground One: Ineffective Assistance of Counsel**

In ground one, Perry asserts that he did not receive effective assistance of  counsel.

First, to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained recently by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under §
> 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d)

are both "highly deferential," *id*., at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251.  Federal habeas courts must guard  against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington v. Richter,* 131 S. Ct. 770, 788 (U.S. 2011); *accord Kennedy v. Warren*, 2011 WL 1642194, *2 (6th Cir. May 3, 2011); *accord Goza v. Welch*, 2012 U.S. Dist. LEXIS 178665 at **24-25 (N.D. Ohio Dec. 18, 2012).

Specifically, Perry argues that he received ineffective assistance because: (1) counsel failed to argue the insufficiency of the indictment, and (2) counsel coerced him into pleading guilty to all charges while Perry was under the influence of prescription mind-altering drugs.  Ground one asserts that trial counsel was ineffective for failing to challenge the indictment as defective, while ground two alleges that because the indictment was defective Perry was deprived of his federal constitutional rights.  (ECF No. 1.)  As these assignments are interrelated, the Court will address them together.

### 1. Sufficiency of the Indictment

Before the state courts, Perry asserted that  "[t]he indictment(s) filed in the instant case i.e. Count(s) 1 and 2, are written in the short form and seek to charge the offense solely in the language [of] R.C. 2903.01(B).  However, the said Count(s) omit a direct and positive averment of the essential element of an 'intent to kill', and, thereby, fails to fairly apprise Appellant, with reasonable certainty, of the specific nature of the accusation against him to the end that he would know what he was to be prepared to meet and to defend against at trial."  (ECF No. 8-2, Exh. 20 at

-16-

12.)  Perry reiterates this argument in his last memorandum.  (ECF No. 15 at 3-11.)

With respect to Perry's assertion that the indictments were defective under Ohio law, the

state appellate court throughly addressed this argument and found it to be wholly without merit.

Specifically, that court found as follows:

{¶ 35} A. "Intent to kill"

* * *

{¶ 37} R.C. 2903.01 Aggravated Murder provides, in relevant part as follows:

* * *

{¶ 39} "(B) No person shall purposely cause the death of another or the unlawful
termination of another's pregnancy while committing or attempting to commit, or
while fleeing immediately after committing or attempting to commit, kidnapping,
rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary,
burglary, terrorism, or escape."

{¶ 40} In the case at bar, Count One of the Indictment states,

{¶ 41} "That WILLIAM DOUGLAS PERRY late of said County on or about the
3rd day of October in the year of our Lord two thousand and eight, at the County of
Stark, aforesaid, did purposely cause, the death of Brett W. Smith, while
committing or attempting to commit, or while fleeing immediately after committing
or attempting to commit Aggravated Robbery [R.C. 2911.01(A)(3) ], in violation of
Section 2903.01(B) of the Ohio Revised Code, contrary to the statute in such cause
made and provided, and against the peace and dignity of the State of Ohio."

{¶ 42} Count Two of the Indictment states,

{¶ 43} "And the jurors aforesaid, by their oaths aforesaid, and by virtue of the
authority aforesaid, do further find and present that WILLIAM DOUGLAS PERRY
late of said County on or about the 3rd day of October in the year of our Lord two
thousand and eight, at the County of Stark, aforesaid, did purposely cause the death
of Brett W. Smith, while committing or attempting to commit, or" while fleeing
immediately after committing or attempting to commit Aggravated Burglary [R.C.
2911.11(A)(1) ], in violation of Section 2903.01(B) of the Ohio Revised Code,
contrary to the statute in such cause made and provided, and against the peace and
dignity of the State of Ohio."

{¶ 44} The indictment specified a mens rea requirement. The culpable mental state

-17-

for aggravated murder is purpose-to "purposely cause." R.C. 2903.01(B). *State v. Fry*, 125 Ohio St.3d 163, 169, 926 N.E.2d 1239, 1253, 2010-Ohio-1017 at ¶ 40. Thus, the indictment was proper because it included the culpable mental state for this offense. *Id*.

{¶ 45} The Court in *Fry*, *supra* further held that a defendant commits felony murder by proximately causing another's death while possessing the *mens rea* element set forth in the underlying felony offense.  In other words, the predicate offense contains the *mens rea* element for felony murder.  Therefore, the *mens rea* element need not appear in felony murder count, as long as it is specified in count charging the predicate offense. *Fry*, *supra* 125 Ohio St.3d 163, 169-170, 926 N.E.2d 1239, 1253, 2010-Ohio-1017 at ¶ 43.

* * *

{¶ 50} In *State v. Horner*, 126 Ohio St.3d 466, 935 N.E.2d 26, 2010-Ohio-3830, the Ohio Supreme Court held, "an indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state, overruling *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, and *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169." *Id*. at paragraph one of the syllabus.  Relevant to the case at bar, the Court in *Horner* further noted that aggravated robbery as defined by R.C. 2911.01(A)(3) is a strict liability offense. *Id*. at 474, 935 N.E.2d at 34, 2010-Ohio-3830 at ¶ 51.  The Court concluded, "Thus, because the language of Horner's indictment charging him with aggravated robbery tracked the aggravated robbery statute, R.C. 2911.01(A)(3), and because the statute does not require any further mens rea requirement beyond that encompassed in the theft portion of the statute, the grand jury considered the essential elements of aggravated robbery. Accordingly, we uphold the appellate court's determinations that the indictment was not defective and that there was no plain error...." *Id*. at 475, 935 N.E.2d at 34, 2010-Ohio-3830 at ¶ 55.

{¶ 51} In the case at bar, the aggravated felony-murder count in count one of the indictment, read in *pari materia* with the related aggravated robbery count, provided ample notification of the elements of the underlying offenses that the state was required to prove.  See *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 29.  Thus, the indictment for Count One was not defective. *Fry*, *supra* 125 Ohio St.3d 163, 169-170, 926 N.E.2d 1239, 1253, 2010-Ohio-1017 at ¶ 41.

{¶ 52} In the case at bar, Count Two of the Indictment specified aggravated burglary as the predicate offense for the felony-murder.  The offense of aggravated burglary was charged separately in Count Four of the indictment.  The aggravated-burglary count states: "[appellant] ... did, knowingly, by force, stealth, or deception,

-18-

trespass in 81 Balsam St. N.W., North Canton, Ohio, an occupied structure, or a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender was present, *with purpose to commit* therein any criminal offense, and the said WILLIAM DOUGLAS PERRY recklessly inflicted, or attempted or threatened to inflict physical harm on Brett W. Smith, in violation of Section 2911.11(A)(1) of the Ohio Revised Code, contrary to the statute in such cause made and provided, and against the peace and dignity of the State of Ohio." [Emphasis added].

{¶ 53} The culpable mental state for aggravated burglary is "purposeful" and was properly set out in the indictment. *Fry*, *supra* 125 Ohio St.3d 163, 170, 926 N.E.2d 1239, 1253-1254, 2010-Ohio-1017 at ¶ 44.

{¶ 54} The aggravated felony-murder count, read *in pari materia* with the related aggravated burglary count, provided ample notification of the elements of the underlying offenses that the state was required to prove. See *State v. Foust*, 105 Ohio St.3d 137, 2004-Ohio-7006, 823 N.E.2d 836, ¶ 29. Thus, the indictment for Count Two was not defective. *Fry*, *supra* 125 Ohio St.3d 163, 169-170, 926 N.E.2d 1239, 1253, 2010-Ohio-1017 at ¶ 41.

*State v. Perry*, 2011-Ohio-274, 2011 Ohio App. LEXIS 233 (Ohio Ct. App. Jan. 24, 2011), appeal not allowed, 2011-Ohio-2055, 128 Ohio St. 3d 1484, 946 N.E.2d 241 (Ohio, May 4, 2011).

Perry also argues that his indictment was defective because it did not set out the elements for theft in Counts Three and Four, which charged him with aggravated robbery and aggravated burglary. (ECF No. 8-2, Exh. 20 at 12-15.) Perry further asserts that Count Four failed to charge the "criminal trespass portion" of aggravated burglary. *Id*. With respect to these arguments, the state appellate court found as follows:

[*P57] An indictment is sufficient if it (1) contains the elements of the charged offense; (2) gives the defendant adequate notice of the charges; and, (3) protects the defendant against double jeopardy. *Valentine v. Konteh* (C.A.6, 2005), 395 F.3d 626, 631, citing *Russell v. U.S.* (1962), 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240.

[*P58] Generally, the requirements of an indictment may be met by reciting the language of the criminal statute. See *State v. Murphy* (1992), 65 Ohio St.3d 554, 583, 605 N.E.2d 884, 907. In *Murphy*, the Ohio Supreme Court rejected the appellant's proposition that the indictment was defective because it failed to identify the precise type of conduct by which he violated R.C. 2911.01 (aggravated

-19-

robbery), and 2911.11 (aggravated burglary).  Citing *State v. Landrum* (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d 710, 724, the Court held that an indictment using the words of the applicable statute was sufficient to charge a defendant with these crimes.  *State v. Childs*, 88 Ohio St.3d 194, 199, 724 N.E.2d 781, 785, 2000 Ohio 298.

[*P59]  In the case at bar, the wording of the indictment tracked the language for aggravated burglary in R.C. 2911.11 and did not need to allege the particular felony that appellant had intended to commit.  In addition, the indictment in the case at bar clearly alleged that appellant "...did, knowingly, by force, stealth or deception, trespass in 81 Balsam St. N.W...."

[*P60]  Finally, appellant received a bill of particulars that supplied much of the information he now claims he lacked.  *Murphy*, *supra* 65 Ohio St.3d at 583, 605 N.E.2d at 907. Appellant has not shown that he was prejudiced in the defense of his case or that he would have proceeded differently if each of the felony-murder counts, the R.C. 2929.04(A) (7) specifications, the aggravated burglary and the aggravated robbery count had been worded differently.

[*P61]  Accordingly, appellant's indictment was not defective.

*Perry*, 2011-Ohio-274 (internal citations omitted).

As the indictments complied with Ohio law, there was simply no reason for counsel to challenge the indictments.  Furthermore, because the state court found that a challenge to the sufficiency of the indictment would be devoid of merit, Perry cannot establish prejudice.  There is no reasonable probability that a challenge to the sufficiency of the indictment would have been successful.  Though Perry undoubtedly believes the state appellate court's interpretation of Ohio law is incorrect, this Court must accept an Ohio court's interpretation of Ohio law.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."); *see also Riley v. Woods*, 2010 U.S. Dist. LEXIS 81453 at **11-12 (E.D. Mich., Aug. 11, 2010) ("A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes.") (*citing Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002); *Coe v. Bell*, 161 F.3d 320,

347 (6th Cir. 1998)).

To the extent that Perry believes his counsel was ineffective for failing to argue that the indictment was insufficient under federal law, it is well settled that the federal guarantee of a grand jury indictment does not apply to the states. *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Branzburg v. Hayes*, 408 U.S. 665 (1972)); *accord Riffel v. Erwin*, 2005 U.S. Dist. LEXIS 11666 (S.D. Ohio 2005). In addition, "the Constitution does not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some other manner." *Id*. (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954 (1976)). Nevertheless, the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal defendant "fair notice" of the charges against him to permit adequate preparation of his defense. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977). The fair notice requirement is met when a charged offense "[is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged." *Id*. "To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). The United States Supreme Court has held as follows:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Carll*, 105 U.S.

-21-

> 611, 612 (1882). "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487 (1888).

*Hamling v. United States*, 418 U.S. 87, 117-118 (1974); *accord United States v. McAuliffe*, 490 F.3d 526, 530 (6th Cir. 2007); *United States v. Jackson*, 327 F.3d 273, 290 (4th Cir. 2003).

As noted by the state appellate court, both counts one and two of the indictment contained the *mens rea* that Perry acted "purposely."[3]  (ECF No. 8, Exh. 1.)  In counts three and four, the indictment contained the *mens rea* that Perry acted "knowingly."  *Id*.  Nonetheless, even if the *mens rea* had been omitted, such an omission alone is not a federal constitutional violation so long as Perry received fair notice.  This simply requires that the accused be apprised with some precision and certainty of the crime with which he stands charged.  In *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006), it was found that fair notice was provided to a defendant even though the indictment did not expressly set out the *mens rea*.  The *Williams* court explained as follows:

> The indictment here undoubtedly provided Williams with fair notice of the charges against him.  The indictment's reliance on references to the principal statutes to identify the mens rea elements does not render the indictment insufficient because Williams still had adequate notice of the offenses to prepare his defense.  Although the exact mens rea requirements were not stated in the indictment, the indictment precisely stated the offenses with which Williams was charged so that there could be no confusion on this point.  Moreover, the indictment referenced the principal statutes for the mens rea requirement, and thus Williams could have located the statutes and determined the mental states required for the offenses with which he was charged.  The sufficiency of the indictment is bolstered by our prior determination that even in a federal prosecution, which is held to the more stringent requirements imposed by the Fifth Amendment Grand Jury Clause, an indictment is

---

[3]  Pursuant to O.R.C. § 2901.22(A), "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

-22-

> sufficient when it refers to the appropriate statute for the mens rea element rather
> than explicitly specifying the required mental state.  *United States v. Martinez*, 981
> F.2d 867, 872 (6th Cir. 1992).  For these reasons, the indictment in this state
> prosecution satisfied the mandates of due process.

*Williams*, 467 F.3d at 535-36 (footnotes omitted); *accord Peeks v. Sheets*, 2010 U.S. Dist. LEXIS

21202 (S.D. Ohio Mar. 9, 2010).

There is nothing unreasonable about the state court's determination that Perry received fair

notice of the charges against him.  Moreover, this Court agrees with the reasoning of the Southern

District Court of Ohio in an analogous case:

> Here the indictment specifically identified the type of crime petitioner allegedly
> committed ..., the date of the crime, and the names of the alleged victims.  That
> information was sufficient to allow him to prepare a defense, and he does not argue
> otherwise.  The fact that the indictment did not specify a *mens rea* requirement -
> just as the underlying Ohio statutes do not - does not mean that petitioner was
> unaware that the state had to prove *mens rea*, or unaware what *mens rea* applied to
> these crimes.

*Arthurs v. Warden, Warren Corr. Inst.*, 2012 U.S. Dist. LEXIS 39779 at **17-18 (S.D. Ohio Mar.

23, 2012).

This Court can grant habeas relief only where a state court's decision is contrary to, or

involves an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States.  Given the lack of any clearly established United States

Supreme Court precedent, requiring charging documents in state criminal proceedings to explicitly

set forth the requisite *mens rea* of the offense charged, Perry's argument that his indictment was

insufficient is without merit.[4]  As such, his related argument that counsel was ineffective for failing

to challenge the indictment is similarly meritless.

---

[4] It also bears noting that a Bill of Particulars explains the crimes of which Perry was
charged in greater detail and was served upon Perry's counsel.  (ECF No. 12-3, Exh. B.)

**2.  Guilty Plea**

Perry asserts that his counsel coerced him into pleading guilty to all charges while Perry was allegedly under the influence of prescription drugs.  (ECF No. 1.)

The United States Supreme Court has observed that "[w]here ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  The Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id*. at 58.  While ruling that the first prong of the *Strickland* test remained unchanged in such cases, the Supreme Court explained that the prejudice requirement is satisfied by showing "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.  The Sixth Circuit has explained that a court that applies the *Strickland* test rather than the more specific standard set forth in *Hill v. Lockhart* applies "the wrong legal standard" to a guilty plea allegedly induced by ineffective assistance.  *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (*quoting with approval Ostrander v. Green*, 46 F.3d 347, 352 (4th Cir. 1995)).  "Under *Strickland*, the defendant shows prejudice if, but for counsel's poor performance, there is a reasonable probability that the outcome of the entire proceeding would have been different.  Under *Hill*, the defendant must show merely that there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial."  *Ostrander*, 46 F.3d at 352.  Thus, there is a significant difference between the two tests, as "[i]t is easier to show prejudice in the guilty plea context because the claimant need only show a

-24-

reasonable probability that he would have pleaded differently." *Griffin*, 330 F.3d at 737.

Thus, the question a court must answer is *not* whether a reasonable person in defendant's position would have proceeded to trial, but rather whether there is a reasonable probability that, absent defense counsel's errors, the defendant would have insisted on going to trial. *See Ostrander*, 46 F.3d at 355. Perry's claim is rather unusual. In most cases alleging ineffective assistance of counsel in a guilty plea context, the petitioner points to some form of bad advice or inaction by counsel as the basis for his or her claim. Herein, Perry does not allege that counsel failed to uncover favorable evidence that could have disproved his guilt, nor does he identify any faulty or inaccurate legal advice, save for his meritless argument that the indictment was insufficient. As such, Perry has failed to demonstrate that counsel's advice was outside the range of competence demanded of attorneys in criminal cases.

Assuming *arguendo* that Perry was mentally impaired due to prescription drug ingestion – an assertion that he specifically denied when entering his plea – that alone does not render his attorneys' advice to accept the plea ineffective given the strength of the evidence against him and the possibility that he would have received a death sentence. Moreover, Perry has failed to set forth any credible evidence that he would have opted to proceed to trial despite the mountain of evidence against him. "Although [the *Hill* prejudice prong] focuses the inquiry on a subjective question, the answer to that question must be reached through an *objective analysis*." *Id.* (emphasis added); *see also Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). Simply put, Perry's self-serving statements are not enough to demonstrate that he would not have pled guilty but for counsel's alleged unprofessional errors.

Although Perry's petition challenges the effectiveness of his counsel, Perry's last

-25-

memorandum also avers that his plea was not knowingly, voluntarily and intelligently entered due to the effects of the drugs he was taking.  (ECF No. 15 at 21-22.)  To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently.  *See United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007), *citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.")  A trial court should ensure that a "defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged."  *Id*., *quoting United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005); *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988).  "A failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea."  *United States v. Broce*, 488 U.S. 563, 574 (1989); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (ineffective assistance of counsel may prevent a defendant from entering a knowing and voluntary plea); *accord United States v. Bradshaw*, 1998 U.S. App. LEXIS 10517 (6th Cir. May 20, 1998) (a claim that a defendant received ineffective assistance of counsel, or that his guilty plea was coerced, is "not ordinarily ... barred by an apparent unconditional guilty plea.")  However, "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."  *Id*. (*quoting Mabry v. Johnson*, 467 U.S. 504, 508 (1984)).

The state appellate court, after discussing the applicable standards for ineffective assistance of counsel, addressed Perry's claim as follows:

[*P84]  Next, appellant appears to complain that his trial counsel took advantage of his allegedly being heavily medi[c]ated at the time of his plea, coerced him into pleading guilty, and failing to inform the court of his medicated state. Appellant states in his brief, "This issue was raised at the change of plea hearing by the Appellant when asked if he was under the influence of any drugs, and he replied, 'yes' and informed the trial court of the drugs he was taking and his Bipolar Disorder and his Post-Traumatic Stress Disorder.  The trial court had a duty to investigate this matter before accepting a plea that could not be knowingly, intelligently, and voluntarily made." [Appellant's Brief at 11].

[*P85]  Appellant, however, presented the trial court with no evidentiary quality evidence to support his claims. Further, appellant has not provided this Court with a transcript of his change of plea hearing that was conducted in the trial court.

[*P86]  In *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384, the Supreme Court of Ohio held the following: "[t]he duty to provide a transcript for appellate review falls upon the appellant.  This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record.  *See State v. Skaggs* (1978), 53 Ohio St. 2d 162, 372 N.E.2d 1355. This principle is recognized in App.R. 9(B), which provides, in part, that ' * * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record.* * *.'  When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." (Footnote omitted.)

[*P87]  Without a transcript of the proceedings, appellant cannot demonstrate any error or irregularity in connection with the trial court's decision to accept appellant's negotiated guilty pleas. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St. 2d 197, 199, 400 N.E.2d 384.  A presumption of regularity applies to the trial court's acceptance of appellant's guilty pleas and appellant has shown us nothing to overcome the presumption.

[*P88]  In the case sub judice, appellant did not meet his burden, under App.R. 9(B), to supply this Court with a transcript of the proceedings from his original plea and the original sentencing hearing.  If such transcript were unavailable, other options were available to appellant in order to supply this Court with a transcript for purposes of review.  Specifically, under App.R. 9(C), appellant could have submitted a narrative transcript of the proceedings, subject to objections from appellee and approval from the trial court.  Also, under App.R. 9(D), the parties could have submitted an agreed statement of the case in lieu of the record. The record in this matter indicates appellant did not attempt to avail himself of either

-27-

App.R. 9(C) or 9(D).

*Perry*, 2011-Ohio-274 at ¶¶70-88.[5]

Essentially, the state court found that Perry failed to provide factual support to rebut the presumption that the plea proceeding was proper. This Court has been furnished with a transcript of the plea proceedings. A review of the transcript reveals that Perry acknowledged that he signed the guilty plea of his own free will, that he read the plea, that his attorneys went over the plea with him, that they explained anything he did not understand, and that he had no problems understanding anything in the agreement. (ECF No. 12-4, Tr. 31-33.) Perry specifically denied any form of coercion in signing the form. (Tr. 33.) He also denied being promised anything in return for his guilty plea. *Id.* Later in the proceedings, he was asked a second time whether he had been threatened, forced, or promised anything before accepting the guilty plea. (Tr. 117.) Again, he replied in the negative. *Id.* He also reiterated three more times that he was choosing to plead guilty of his own free will. (Tr. 95, 110-11.) Notably, Perry indicated that he was satisfied with his counsels' representation. (Tr. 119.) Perry's counsel also introduced at the plea hearing a letter wherein forensic psychologist Jeffrey Smalldon concluded that Perry was competent to enter a plea. (Tr. 26.)

Later in the proceedings, a panel judge returned to the issue of Perry's medications and made a more thorough inquiry:

> Judge Sinclair: Now, I know we've talked a bit about the medications that you take. Do you know what your dosage is of Prozac?
>
> Defendant Perry: 40 milligrams.

---

[5] The state appellate court's lengthy discussion regarding the admissibility of "learned treatises" has been omitted.

Judge Sinclair: 40 milligrams? How long have you been on it?

Defendant: Eight months.

Judge Sinclair: Eight months? I mean, did you just start that actually when you came into the jail pretty much?

Defendant Perry: Yes. Your Honor.

Judge Sinclair: Okay. Had you ever had it before in your lifetime?

Defendant Perry: Yes, Your Honor.

Judge Sinclair: How long ago?

Defendant Perry: A couple years.

Judge Sinclair: Okay. And then you were off it for several years?

Defendant Perry: Yes, Your Honor.

Judge Sinclair: Have you found, since you've been at the jail taking it, that it's been helpful to you?

Defendant Perry: Yes, Your Honor.

Judge Sinclair: Okay. Again, I know we talked about this, does it -- from your standpoint, does it cause you any problems at all with your reasoning ability or anything else that -- you think it might cloud your thought process at all?

Defendant Perry: No, your Honor.

Judge Sinclair: Okay. Has it in any way made you better from your thought process and your reasoning ability?

Defendant Perry: Yes, Your Honor.

Judge Sinclair: Okay.  And you've been taking it consistently as you should for the last eight months?

Defendant Perry: Yes, Your Honor.

Judge Sinclair: Okay. Mr. Kaplanis, Mr. Koukoutas, [defense counsel] has there been any point in time whatsoever throughout the course of this case that any

-29-

medication or any inability to think or reason has caused you any concern with Mr. Perry's ability to communicate with you?

Mr. Kaplanis: No, sir, Your Honor.

Judge Sinclair: No?

Mr. Koukoutas: No, Your Honor.

Judge Sinclair: Has it been raised to you at all by Dr. Smalldon as being an issue in the case at all?

Mr. Koukoutas: No, sir.  No, sir.

Judge Sinclair: Mr. Perry, Dr. Smalldon, did he know you were taking the Prozac?

Defendant Perry: Yes, Your Honor.

Judge Sinclair: Okay.  And the other medication also?

Defendant Perry: Yes, Your Honor.

Judge Sinclair:   The other medication, likewise, has not caused you any problems?

Defendant Perry: No, Your Honor.

(ECF No. 12-4, Tr. 111-13.)

"The Supreme Court has held that a defendant must have 'sufficient awareness of the relevant circumstances and likely consequences' of his plea." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (*citing Brady v. United States*, 397 U.S. 742, 748  (1970).  A guilty plea must be accompanied by an affirmative showing that it was intelligent and voluntary, which generally can be accomplished by the government's production of a transcript of state court proceedings to establish that the plea was made voluntarily.  *Id*., (*citing Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)).  For a plea to be valid, the Constitution requires that a defendant be informed of all direct consequences of his plea.  *See, e.g.,*

-30-

*Brady*, 397 U.S. at 755.

A review of the transcript reveals that Perry was informed of the consequences of his plea. Perry stated that he freely entered the plea.  The only irregularity Perry now raises is his own mental state, which he alleges was altered by the prescription medications he was taking.  In an affidavit, Perry claims he had no recollection of the above discussions until he reviewed the transcript.  (ECF No. 15-1.)  The above exchange indicates, however, that Perry not only disavowed any negative effect caused by the prescription drugs, but stated they actually improved his reasoning and thought process.  The transcript also indicates that psychologist Dr. Smalldon, who was aware of the drugs Perry was prescribed, believed him to be competent to enter a plea. As argued by the Respondent, a solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976).  "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.  Perry's subsequent self-serving allegations cannot be allowed to contradict his clear and direct responses, the opinion of Dr. Smalldon, the representations of counsel, and the trial court's own observations.  There simply is no evidence to support Perry's claim that his counsel coerced him to plead guilty while Perry was under the influence of prescription mind-altering drugs, or that his plea was not knowingly, voluntarily, and intelligently entered.

## V.  Conclusion

For the foregoing reasons, it is recommended that Perry's petition be DENIED.

/s/ *Greg White*
U.S. Magistrate Judge

Date: April 9, 2013

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).